IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GENAE MICHELLE GEORGE,

    Plaintiff,
v.                                                      CASE NO. 1:17-cv-7-WTH-GRJ

NANCY A BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") terminating her disability benefits due to medical improvement. The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 12, 20, 23. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff was initially determined to be disabled beginning in April 2009, at the age of 37, due to nervous system disorders. R. 95. In 2013, the agency conducted a disability review which concluded with the determination that Plaintiff was no longer disabled due to medical

improvement. R. 118-23. The cessation of benefits was affirmed on reconsideration and Plaintiff requested a hearing before an ALJ. R. 124-25, 141-42. The ALJ issued an unfavorable decision and the Appeals Council denied review. R. 7-11, 17-32. This appeal followed. The sole issue presented is whether substantial evidence supports the Commissioner's decision that Plaintiff's condition was no longer disabling as of January 1, 2014. ECF No. 20 at 12.

## II. STANDARD OF REVIEW

A claimant bears the burden of providing evidence that she is disabled within the meaning of the Social Security Act.[1] In a termination of benefits case, the issue is whether substantial evidence shows that Plaintiff's impairments medically improved to the point that she is able to perform substantial gainful activity.[2] Medical improvement is defined as any decrease in the medical severity of Plaintiff's impairments based on changes in the symptoms, signs, and/or laboratory findings associated with Plaintiff's impairments.[3] The standard for medical improvement and the required sequential evaluation process are outlined in the regulations at 20

---

[1] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001.)

[2] See 42 U.S.C. 423(f); 20 C.F.R. 404.1594(a).

[3] 20 C.F.R. 404.1594(b)(1), (C)(1); see also, 20 C.F.R. 404.1528

C.F.R. 404.1594(b)(5).[4] Generally, medical improvement relates to a claimant's ability to work if the claimant has had a decrease in the severity of her impairments and an increase in her RFC.

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[5] Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[6]

---

[4] The steps in the process are:

1. Does the claimant have an impairment which meets or equals the severity of an impairment listed in Appendix 1?
2. If not, has there been medical improvement as shown by a decrease in severity? If so, see step 3, otherwise, go to step 4.
3. If there has been medical improvement, is it related to the claimant's ability to work?
4. If there has not been medical improvement or if the medical improvement is not related to the ability to do work, do any exception(s) to the medical improvement standard apply?
5. If there has been medical improvement related to the ability to work, or if one of the exceptions applies, does the claimant have a severe impairment or combination of impairments?
6. If the claimant has a severe impairment, does the claimant have the RFC to perform his/her past relevant work?
7. If not, does the claimant have the RFC and vocational factors to perform other work?

[5] *See* 42 U.S.C. § 405(g) (2000).

[6] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389,

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[7] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[8] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[9]

### III. SUMMARY OF THE RECORD

#### *A. Findings of the ALJ*

The ALJ determined that the "comparison point decision" (CPD) was

---

401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[7] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[8] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[9] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

the most recent favorable medical decision finding that Plaintiff was disabled dated January 11, 2010. According to the ALJ, at that time it was determined that Plaintiff had the impairments of: residuals from a prior motor vehicle accident including a seizure disorder and disorder of the nervous system. Those impairments were found to result in the RFC for less than a full range of sedentary work. Through March 31, 2014, the date Plaintiff's disability ended, Plaintiff did not engage in any substantial gainful activity. Plaintiff did not develop any additional impairments after the CPD through March 31, 2014. The ALJ determined that Plaintiff's anxiety disorder was not severe because it caused only mild limitations. Plaintiff had never experienced an episode of decompensation of extended duration and did not have a mental impairment that satisfied the paragraph "C" criteria of the listings. Plaintiff's medical records did not disclose serious mental health issues.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the listings. The ALJ determined that the medical evidence supported a finding that there was a decrease in severity of Plaintiff's impairments compared with her condition at the most recent CPD. At the time of the CPD, a consultative physical

examination by Taghi Kimyai Asadi, M.D., reflected the following: Plaintiff was status post a severe closed head injury with residual posttraumatic syndrome characterized by cognitive, psychological, and fine movement and gait disorders. She had tremors in her limbs with balance and gait problems, limitations with undertaking fine dexterity-type movements, and her finger-to-nose and heel-to-toe examinations were abnormal with tremor and dysmetria. Her repetitive movements were also abnormal, and her plantar reflexes were down going. R. 22-23. In contrast, the ALJ found that Plaintiff's current seizures, jerks, and tremors were well-controlled with her medication and her symptoms had improved significantly and stabilized. *Id*.

The ALJ determined that Plaintiff has the RFC to perform light work except that she could sit, stand, or walk for six hours each in an eight-hour workday; lift/carry 20 pounds occasionally and 10 pounds or less more frequently; and use her extremities for the pushing/pulling for arm, hand, and foot/pedal controls. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds. Plaintiff can frequently balance, stoop, kneel, crouch, and/or crawl. She can frequently reach in all directions, handle, finger, and feel. Plaintiff must avoid work in proximity

to hazards and unprotected heights where she would be near open bodies of water. In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements regarding her subjective symptoms were not consistent with the objective medical and other evidence in the record. R. 23-24.

Relying on the testimony of a VE, the ALJ found that beginning March 31, 2014, Plaintiff was capable of performing her past relevant work as an order clerk, statistical clerk, and user support analyst. The ALJ therefore found that Plaintiff's disability ended as of March 31, 2014. R. 25-26.

### B. Medical Evidence

The ALJ discussed the following medical evidence in finding that Plaintiff's condition had improved since the CPD. In November 2012, Plaintiff was seen at the Department of Neurology at George Washington University. Plaintiff reported a loss of consciousness a month prior to the examination, and also complained of worsening myoclonic jerks for the past three years. Plaintiff reported that in 2009 she was started on Lamictal and Klonopin which helped myoclonus for one year until she discontinued using it. Plaintiff's physical examination was normal, with normal muscle tone and strength, intact sensation, normal coordination,

and normal gait. The physician assessed that it was unclear whether the loss of consciousness was due to a seizure versus a psychogenic episode. The treatment plan included a routine EEG, brain MRI, and starting Lamictal in addition to Plaintiff's prescribed dosage of Klonopin to help control myoclonus since she previously was on that regimen with adequate control of symptoms. R. 316-17.

In December 2012, an EEG showed the presence of a focal epileptiform disturbance confined to the left temporal region. It was noted that the EEG findings could be compatible with a seizure disorder of partial onset, and a structural lesion within the left temporal lobe should be ruled out. R. 318.

Plaintiff was seen by a neurologist at UF who was unsure whether her symptoms reflected an actual seizure disorder. A September 2013 MRI of her brain was interpreted as normal, with no acute or structural abnormality to account for Plaintiff's seizures and no apparent sequelae of recent seizure. R. 352.

In December 2013 , Maria Hella, M.D., with the UF Neurology Clinic, completed a "Treating Source Seizure Questionnaire". Dr. Hella reported that Plaintiff's seizures were controlled, with the last event with loss of

consciousness occurring in March 2013. Plaintiff had no seizures in the previous three months, and had been compliant with her prescribed Lamictal. R. 358-59. In January 2014, Dr. Hella assessed that Plaintiff had normal grip strength and fine dexterity and no deficits in her sensory, motor, or reflex exam.

More recent progress notes reflect that Dr. Hella continued to question whether Plaintiff has a seizure disorder. For example, in August 2014, Dr. Hella observed that Plaintiff had one episode of loss of consciousness in March 2013, and the loss of consciousness was more consistent with syncope than seizure. Dr. Hella further noted that Plaintiff's symptoms abate with Klonopin and worsen with its cessation, suggesting benzodiazapine withdrawal as a differential diagnosis. In view of Plaintiff's history of significant intracranial injury, abnormal EEG, and recurrent myoclonic jerks, "seizure continues to be considered." The treatment plan included increasing Plaintiff's Lamictal, further EEG studies, referral to psychiatry for evaluation and management of psychiatry and depression, and weaning off Klonopin under medical supervision. Plaintiff's physical examination was normal. R. 397-98.

A state agency reviewer, Dr. Robert Steele, concluded that as of

January 2014 there was significant improvement in Plaintiff's condition since the time of the CPD in that she had no seizures for the past three months and now had normal gait, strength, and overall physical examinations.  R. 372-79.  In February 2014, state agency medical consultant Dr. Mary Seay assessed a physical RFC for Plaintiff consistent with a capacity for light work with some postural limitations to account for seizure precautions.  R. 380-87.

### C.  Hearing Testimony

Plaintiff's initial hearing took place on November 25, 2014.  R. 45-94.  Plaintiff waived representation.  At the time of the hearing, Plaintiff was 43 years old.  Plaintiff has an MBA degree from Trinity Washington University, Washington, D.C.   She testified that she last worked in 2011, at an internship with the Census Bureau.  She made about $24,000 at that job.  It was a temporary job and Plaintiff was not offered a permanent position due to mistakes stemming from her condition.  Previously, Plaintiff worked for Verizon for six years beginning in 2000.  She worked as a maintenance administrator taking orders over the phone.  Plaintiff continued looking for work after she moved to Florida in 2013, and was working on a resume to apply for a position at the time of the hearing.   R. 51-58.

    Plaintiff testified that although she received a CD with her medical records from the agency, she had not yet reviewed them.  Plaintiff testified that there were other records that should be included.  In response to the ALJ's questions, Plaintiff testified that she takes Lamictal for seizures, and testified that she had been taking it six months or more.  Previously she took Klonopin for myoclonus.  Plaintiff testified that she had an episode where she blacked out but did not know if she had experienced a seizure.  Plaintiff conceded that her test results did not show epilepsy, but testified that Dr. Hella wanted to perform a more extensive test.  Plaintiff was unsure whether she could afford the additional testing.  R. 63-66.

    The ALJ pointed out medical records that suggested Plaintiff did not take her medication, including Lamictal and Zoloft, consistently.  Plaintiff testified that she was having a hard time dealing with the medication.  Plaintiff had just started seeing a psychiatrist for anxiety and depression.  Plaintiff testified that she was prescribed Klonopin for myoclonus.   She admitted that she did not take Zoloft, prescribed for depression, as it was prescribed because it made her ill.  R. 68-70, 74-75.

    Plaintiff disputed that the agency had all of the information necessary to decide that her condition had improved such that she was no longer

disabled. Plaintiff testified that her doctor recently told her she could have a seizure. R. 70-71.

Plaintiff testified that she lives alone in an apartment. She was advised to exercise, so she takes walks in the morning. She has a computer and is always on the phone or writing, looking for a job. Plaintiff uses the microwave, makes salads, and eats fruit. She does not use public transportation. A neighbor or friend of her father provide transportation, and she can walk to a grocery store. Plaintiff performs household chores. In her free time, she reads a lot of autobiographies and political information. She reads things on the internet, and reads the Bible. R. 78-80.

Plaintiff attempted to find work through Workforce Development. She also sought assistance from the Division of Vocational Rehabilitation. Plaintiff had recently applied for a job as a community representative with Home Instead. She was "continuously looking" for work. R. 81-83.

The VE testified that Plaintiff's past relevant work included Order Clerk (sedentary, SVP-4), Statistical Clerk (sedentary, SVP-4), and User Support Analyst (sedentary, SVP-7). Assuming a person with Plaintiff's age, education, experience, and RFC for light work with certain postural

and environmental limitations (including only frequent handling and reaching), Plaintiff could return to her past jobs as Order Clerk and User Support Analyst. The Statistical Clerk position would be precluded "due to the continues [sic] reaching and handling of things." R. 85-90.[10]

The ALJ adjourned the hearing in order to obtain the additional records referenced by Plaintiff. A supplemental hearing was held on March 31, 2015, during which Plaintiff provided additional medical records. R. 35-44.

## IV. Discussion

Plaintiff argues that "on the face of the medical record, there is no medical improvement, because there cannot be improvement after a traumatic brain injury." ECF No. 20 at 18. As support for this argument, Plaintiff points to the opinion of a "consulting doctor" noting that following her injury, from which she had a "good recovery," Plaintiff "remains with anxiety, poor concentration, depression, tremor of her limbs, mild balance problems with her gait and fine movements. Past medical history is

---

[10]The ALJ concluded that Plaintiff had the RFC to perform all three jobs identified as past relevant work both as generally and actually performed. R. 25-26. Although the VE testimony appears to preclude the Statistical Clerk job, *see* R. 89-90, Plaintiff has not asserted any error in that regard. Such error, if any, is harmless because the ALJ identified two other jobs that Plaintiff could perform.

otherwise unremarkable." *Id*. at 18-19.  Plaintiff also argues that because the Commissioner does not allege that the original decision granting benefits was erroneous, the cessation decision is not supported by substantial evidence.  *Id.* at 19.

The consultative examination relied on in Plaintiff's argument is the October 2009 examination by Dr. Kimyal-Asadi, which provided support for Plaintiff's prior disability determination.  Plaintiff's argument presupposes that medical improvement cannot occur after the type of injury sustained by Plaintiff.  That assertion is not supported by Dr. Kimyal-Asadi's 2009 assessment, which is silent with respect to Plaintiff's prognosis for medical improvement several years after his assessment.  *See* R. 294.  Plaintiff points to no medical evidence that supports this conclusional assertion, which is refuted by the medical evidence and Plaintiff's own testimony that Dr. Hella encouraged her that people with her condition do "get better".  R. 59.

As summarized above, the ALJ pointed to specific medical records showing that Plaintiff's seizures—to the extent she has experienced seizures and not syncope or other event— and myoclonus are controlled by medication, when Plaintiff is compliant with medication.  R. 23.  Further,

Plaintiff's examinations during 2014 reflect consistently normal physical findings, including normal grip strength, fine dexterity, and no deficits in her sensory, motor, or reflex examination. *See* R. 361-62, 358-60, 361-62, 401. Dr. Hella observed in January 2014 that Plaintiff at that time was compliant with her medication and had not had any seizures for the past three months. Her last episode of loss of consciousness occurred in March 2013. R. 358-60, 361-62, 398. Dr. Hella noted that Plaintiff's symptoms abated with medication. R. 395-402.

The ALJ afforded Dr. Hella's treating physician opinion significant weight, noting that the opinion was consistent with Dr. Hella's objective findings and other medical evidence of record, including the state agency consultants, who concluded that Plaintiff's condition had improved since the CPD and that she had the RFC for light work with certain restrictions. R. 25.

As the Commissioner point out, Plaintiff's own testimony also provides substantial evidence to support the ALJ's determination. ECF No. 23 at 9-10. Plaintiff testified that she worked for the Census Bureau in 2012, and was actively seeking other employment. Plaintiff lives on her own in an apartment, cares for her own needs, uses a computer, reads

avidly, and walks for exercise. *See* R. 45-94.

On this record, the Court finds that the ALJ's determinations that Plaintiff experienced medical improvement in her impairments as of January 1, 2014, and had the RFC for light work with the stated limitations, are supported by substantial evidence.

### V. CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of the Commissioner terminating Plaintiff's benefits should be **AFFIRMED.**

**IN CHAMBERS** at Gainesville, Florida this 2nd day of January 2018.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**